IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

SHAWN HORNBECK,                         )
MONTE BURGESS,                          )
RAYMOND BIERI,                          )
DAN CHEVALIER,                          )
JIM KIRCHER, and                        )
ROBERT CAVINESS                         )
each on behalf of himself               )
and others similarly situated;          )
                                        )
                Plaintiffs,             )
                                        )    Case No. 18-00941-CV-W-BP
        v.                              )
                                        )
ORSCHELN FARM AND HOME, LLC             )    **<u>JURY TRIAL DEMANDED</u>**
d/b/a ORSCHELN FARM AND HOME            )
                                        )
-and-                                   )
                                        )
CITGO PETROLEUM CORPORATION             )
                                        )
-and-                                   )
                                        )
THE FAMILY CENTER                       )
OF HARRISONVILLE, INC.                  )
                                        )
-and-                                   )
                                        )
MARTIN OPERATING PARTNERSHIP,           )
L.P. d/b/a MARTIN LUBRICANTS            )
                                        )
        SERVE:                          )
        Registered Agent,               )
        CT Corporation System           )
        120 South Central Ave.          )
        Clayton, MO 63105               )
                                        )
                Defendants.             )

1

## SECOND AMENDED CLASS ACTION COMPLAINT

COME NOW Plaintiffs, on behalf of themselves and all others similarly situated, and for their Second Amended Class Action Complaint state and allege as follows:

## INTRODUCTION

1. For years, Defendants Orscheln Farm and Home ("Orscheln"), LLC, The Family Center of Harrisonville, Inc., ("Family Center"), Citgo Petroleum Corporation ("Citgo"), and Martin Operating Partnership ("Martin Lubricants"), as well as other lubricant manufacturers and sellers, have deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as "303" fluid that meets certain manufacturer specifications when, in fact, the "303" designation is obsolete and 303 specifications have not been available for over forty (40) years. These manufacturers and sellers have also deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, Defendants knew, or should have known, the fluid they were selling did not meet all listed manufacturer specifications and did not contain the anti-wear and protective properties required in tractor hydraulic fluid.

2. Tractor Hydraulic Fluid (THF) is a multifunctional lubricant that has been manufactured for and used in tractors and equipment for over fifty (50) years. It is designed to act as a hydraulic fluid, transmission fluid and gear oil for this equipment. In the 1960s and early 1970s, John Deere (Deere) manufactured a popular and widely used THF called JD-303 or simply "303," and the term "303" became synonymous with the John Deere name and this high-quality and effective THF product.

3. Sperm whale oil was an essential ingredient in Deere's 303 THF. In the mid-1970s, the passage of laws protecting endangered species outlawed the use of sperm whale oil. Deere

2

was forced to manufacture a new tractor hydraulic fluid with different additives that would be both effective and affordable. Deere's "303" formula could no longer be manufactured or sold, and because its essential ingredient—sperm whale oil—could no longer be used, the designation became obsolete and there are no specifications available for "303" tractor hydraulic fluids.

4.     After it stopped producing and selling its 303 THF, Deere manufactured and sold several THF products with certain ingredient, viscosity, anti-wear and detergent additive specifications, including J14B, J20A and J20B. Many other manufacturers created and sold fluids that purported to be similar. The J14B specification became obsolete in the late 1970s. During the time the J20A/B specifications were in use, Deere used a licensing program called Quatrol to police the quality of THF products in the marketplace. The Quatrol program required blenders and sellers of competing THF products to submit test data to Deere prior to the use of the J20A specification on their product labels, to ensure the products met the advertised specifications.

5.     In the late 1980s or early 1990s, Deere abandoned the J20A/B specification as well. Today, John Deere manufactures and sells THF meeting a specification called J20C or J20D (low viscosity). The J20C fluid is sold under the name "Hy-Gard," and many other manufacturers market and sell products meeting the J20C specification in order to compete with John Deere. The following timeline illustrates the history of 303 THF:



**TRACTOR HYDRAULIC FLUID (THF) TIMELINE**

JOHN DEERE THF SPECIFICATIONS

1960 — 1974 — 1978 — 1989 — 2017

J303[1] | J14B | J20A[2] | J20C[2]

J20B[3] | J20D[3]

■ Discontinued
■ Current

Footnotes:
1. There are no specifications available for 303 Tractor Hydraulic Fluids and, as such, products making only "303" claims cannot be tested to assure compliance with any known specifications.
2. Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Summer or warm weather climates)
3. Low Viscosity Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Winter or cold weather climates)

| John Deere Specification | Comment | JD Issue Date |
|---|---|---|
| JDM J20D[3] | THF for cold climates | 1989 - Current |
| JDM J20C[2] | Primary THF specification | 1989 - Current |
| JDM J20B[3] | DISCONTINUED – replaced by JDM J20D | 1978 - 1989 |
| JDM J20A[2] | DISCONTINUED – replaced by JDM J20C | 1978 - 1989 |
| JDM J14B | DISCONTINUED – replaced by JDM J20A/B | 1974 - 1978 |
| JDM J303[1] | DISCONTINUED – replaced by JDM J14B | 1960 - 1974 |

6.     John Deere discontinued the Quatrol program around the time J20A was discontinued (approximately 1989). The subsequent lack of a quality control program or policing of the products in the market resulted in a "free for all" with respect to the THF manufactured and sold in the open market and the opportunity for unscrupulous manufacturers and sellers to falsely use the Deere specifications (and other manufacturers' specifications) on the labels of the THF products they sell.

7.     Defendants deceptively and illegally trade on the obsolete and non-existent "303" designation, the other obsolete J14B and J20A specifications, and the John Deere trade name that was and has continued to be so prevalent in the industry. Because there is no known "303" specification, there is no way for manufacturers, sellers, or anyone else to truthfully claim the product meets or is in compliance with any such specification.

8.     Nonetheless, Defendants promote these 303 THF products as a lower cost alternative, and offer them for sale as economically priced tractor hydraulic fluids that meet many (or in some cases all) manufacturers' specifications, have effective lubricant and anti-wear

4

additives and properties, and are safe for use in purchasers' equipment. The THF fluids are sold with eye-catching photos of modern tractors and industrial equipment and are sold in bright, yellow 5-gallon buckets. By name dropping a list of equipment manufacturers, Defendants seek to create an impression of quality and take advantage of consumers' lack of understanding of the multitude of complex manufacturer specifications. Defendants' Premium 303 Tractor Hydraulic and Transmission Fluid and Mile Master 303 Tractor Hydraulic Fluid are two such products.

9.      In addition to deceptively promoting a designation that is obsolete, Defendants use poor quality base oils, waste oil, line flush, used motor oil and diluted additive packages in their 303 THF products in order to keep production costs down and increase profits. As a result of the inferior ingredients and this "down-treating" of additive packages, the 303 THF fluids not only lack the required lubricant and protective benefits offered to purchasers, the fluids actually cause purchasers' equipment to suffer increased wear and damage to the spiral gear, excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes. Despite use of these inferior ingredients and inadequate protective additives, Defendants label the products and marketed them to unsuspecting purchasers as meeting manufacturer specifications and providing certain benefits and anti-wear properties.

10.     In November 2017, because of the deceptive nature of the 303 THF products, the failures of the products to meet any published specification, and the damage the products could cause to consumers' equipment, the state of Missouri's Department of Agriculture, Division of Weights and Measures, banned Defendants from offering "303" THF products for sale in Missouri.

11.     Prior to the state of Missouri's ban, for years, Defendants' conduct harmed consumers like Plaintiffs, who purchased "303" tractor hydraulic fluid products, more specifically Premium 303 Tractor Hydraulic and Transmission Fluid and Mile Master 303 Tractor Hydraulic

5

Fluid ("303 THF Products"), that were offered and sold as an acceptable tractor hydraulic fluids that meet certain manufacturer specifications and as fluids that are safe for use in farm, construction and logging equipment and have certain characteristics and qualities that protect equipment from wear and damage.

12. In reality, instead of receiving a product that was an acceptable tractor hydraulic fluid that met manufacturers' specifications, Plaintiffs and other purchasers received 303 THF Products that, contrary to Defendants' labeling, had no known specifications, had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications and therefore caused consumers' equipment damage and harm, increased wear, and caused consumers to overpay for a product that was worthless and/or worth much less than the sale price. Like many other consumers throughout the state of Missouri, Plaintiffs Shawn Hornbeck, Monte Burgess, Raymond Bieri, Dan Chevalier, Jim Kircher, and Robert Caviness each purchased Defendants' 303 THF Products, and suffered damage as a result.

## PARTIES

13. Plaintiff Shawn Hornbeck is a citizen and resident of Peculiar, Missouri.

14. Plaintiff Monte Burgess is a citizen and resident of Belton, Missouri.

15. Plaintiff Raymond Bieri is a citizen and resident of California, Missouri.

16. Plaintiff Dan Chevalier is a citizen and resident of Belton, Missouri.

17. Plaintiff Jim Kircher is a citizen and resident of New Franklin, Missouri.

18. Plaintiff Robert Caviness is a citizen and resident of Milo, Missouri.

19. Defendant Orscheln Farm and Home, LLC (Orscheln) is a for-profit limited liability company with its principal place of business in Moberly, Missouri. Defendant Orscheln

6

has advertised and sold its products in Cass County and throughout the state of Missouri at its Orscheln Farm and Home retail stores.

20.     Defendant The Family Center of Harrisonville, Inc. (Family Center) is a for-profit corporation with its principal place of business in Harrisonville, Missouri.  Defendant Family Center has advertised and sold its products in Cass County at its Family Center retail store.

21.     Defendant Citgo Petroleum Company (Citgo) is a for-profit company authorized to do business in the state of Missouri with its principal place of business in Houston, Texas. Defendant Citgo has advertised and sold its products, including its Premium 303 Tractor Hydraulic & Transmission Fluid and its Mile Master 303 Tractor Hydraulic Fluid, in Cass County and throughout the state of Missouri, including at Orscheln Farm and Home retail stores.

22.     Defendant Martin Operating Partnership, L.P. ("Martin Lubricants") is a limited partnership doing business under the name Martin Lubricants.  Martin Lubricants is a for-profit company authorized to do business in the state of Missouri with its principal place of business in Smackover, Arkansas.  Defendant Martin Lubricants sold its products throughout the state of Missouri, including the Orscheln Premium 303 Tractor Hydraulic & Transmission Fluid it manufactured for Orscheln at various points in time relevant to this Second Amended Complaint.

## JURISDICTION AND VENUE

23.     This is a civil case in which the Cass County Missouri Circuit Court has jurisdiction pursuant to Mo. Const., Art. V. § 14.  This action was originally filed in Cass County Missouri Circuit Court, which was an appropriate venue because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment, occurred in Cass County and elsewhere in the state of Missouri.

7

24.     The Circuit Court of Cass County, Missouri had personal jurisdiction over Defendants because Defendants transact business in Missouri, with their various advertising methods and product sales directed toward Missouri residents.  Additionally, original Plaintiffs Hornbeck and Burgess purchased the products at issue in Cass County, Missouri.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

25.     Defendant Orscheln is in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce at retail stores within Cass County and other counties throughout the state of Missouri.

26.     Defendant Family Center is in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce at retail stores within Cass County in the state of Missouri.

27.     Defendant Citgo is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores within Cass County and other counties throughout the state of Missouri.

28.     Defendant Martin Lubricants is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores within Cass County and other counties in Missouri.

29.     During some or all of the time period from 2013 to the present, Defendant Orscheln sold, labeled, and advertised the 303 THF Products in yellow buckets called Premium 303 Tractor Hydraulic & Transmission Fluid and Mile Master 303 Tractor Hydraulic Fluid.

30.     During some or all of the time period from 2013 to the present, Defendant Family Center sold, labeled, and advertised the 303 THF Product in yellow buckets called Mile Master 303 Tractor Hydraulic Fluid.

31.     During some or all of the time period from 2013 to the present, Defendant Citgo manufactured, labeled, and advertised the Premium 303 Tractor Hydraulic & Transmission Fluid and Mile Master 303 Tractor Hydraulic Fluid sold by Orscheln, Family Center, and other retailers.

32.     During some of the time period from 2013 to present, Defendant Martin Lubricants manufactured, labeled, and advertised the Premium 303 Tractor Hydraulic & Transmission Fluid sold in Missouri by Orscheln.

### Defendants' Deceptive Labeling, Marketing and Advertising

33.     During some or all of the time period from 2013 to the present, Defendants offered the 303 THF Products for sale at stores all over Missouri as an acceptable tractor hydraulic fluid meeting a wide number of manufacturers' specifications.  The average sale price for a five (5) gallon bucket of Defendants' THF Products was $25.00, but the price varied somewhat by location and was offered at a discounted price periodically during promotions.

34.     Defendants falsely and deceptively labeled, marketed and offered for sale the Premium 303 Tractor Hydraulic Fluid and the Mile Master 303 Tractor Hydraulic Fluid (1) as universal lubricants for farm logging and construction equipment; (2) as meeting specifications and being acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older and newer tractors and other equipment; (3) as substitutes for and satisfying John Deere's JD-303 specifications; (4) as fluids specifically formulated with base oils and additives designed to help protect against wear, rust, corrosion and foaming; and (5) as  fluids meeting certain John Deere and other OEM specs and/or that may be used as a replacement fluid in equipment made by Allis-Chalmers, Massey; Ferguson, White, Allison, Case, International Harvester, Kubota, John Deere, New Holland, Ford and Caterpillar. Defendants' labeling, marketing, advertising and sale of the 303 THF Products has been widespread, continuous and contained on various signs, labels and

advertisements throughout the state of Missouri for years. Representative examples of Defendants' labeling, marketing and advertising materials are set forth below.

35. During at least some of the Class Period, Mile Master 303 Tractor Hydraulic Fluid was specifically labeled and advertised as follows:



**MileMaster** *PRODUCT INFORMATION*                    Date 10/13

MileMaster 303 Tractor Hydraulic Fluid

**DESCRIPTION:**
MileMaster 303 Tractor Hydraulic Fluid is a tractor hydraulic/transmission fluid for farm tractors, logging and construction equipment where transmission, final drive, hydraulics and wet brakes use a common fluid.

**QUALITIES:**
MileMaster 303 Tractor Hydraulic Fluid is a general purpose multi-grade tractor lubricant for farm, construction and logging equipment. It is specifically formulated with base oils and additives designed to help protect against wear, rust, corrosion and foaming. It may be used as a replacement fluid in select models where 303 fluid (mid-1970 model years and prior) is acceptable.

**APPLICATIONS:**
MileMaster 303 Tractor Hydraulic Fluid may be used as a replacement fluid in select models where 303 fluid is acceptable, including:

| | |
|---|---|
| Allis-Chalmers | International Harvester |
| Massey | Kubota |
| Ferguson | John Deere |
| White | New Holland |
| Allison | Ford |
| Case | Caterpillar |

Not recommended for modern equipment. Refer to owner's manual for recommended oil selection.

36. During at least some of the Class Period, Premium 303 manufactured by Martin Lubricants was specifically labeled and advertised as follows:

10



37.     During at least some of the Class Period, the Orsheln Premium 303 product manufactured by Citgo was specifically labeled and advertised as follows:



38.     These representations were also contained in Defendants' advertising circulars and/or on Defendants' websites.

39.     By naming, labeling, marketing, advertising and selling the 303 THF Products in the foregoing manner, and by describing the products using words such as "303," "general purpose" and "universal," Defendants sought to create, and did create, an image of the 303 THF Products in the minds of Plaintiffs and other consumers that would lead a reasonable consumer to conclude that Defendants' 303 THF Products were completely safe and effective for use in consumers' equipment and all equipment made by the listed manufacturers.

40.     Defendants' product name, labeling, advertising and marketing of their 303 THF Products was material to the reasonable consumer.

41.     At the time of Defendants' labeling, advertisements, marketing and other representations, and as Defendants already knew or should have known, the representations regarding the 303 THF Products were false, deceptive and misleading to consumers seeking to purchase tractor hydraulic fluid.

42.     The John Deere "303" designation is over 50 years old and has been obsolete for many years.  Certain ingredients of the original John Deere 303 fluid—such as sperm whale oil—have been banned since the 1970s and are no longer available for use.  As a result, manufacturers have been unable to make and sell true "303" fluid for over forty (40) years and there are no known specifications for 303 fluid.   Defendants knew or should have known that at the time they were marketing and selling the 303 THF Products during the Class Period, there were no specifications available for "303" tractor hydraulic fluid and, therefore, claims that the 303 THF Products met "303" specifications could not possibly be true, and Defendants had no way to ensure the accuracy of representations that their 303 THF Products were in compliance with any known specifications.

43.     As Defendants knew, or should have known, the 303 THF Products manufactured and sold in the yellow buckets by Defendants lacked some or all of the additives required to provide the advertised "qualities."

44.     As Defendants knew, or should have known, the 303 THF Products manufactured and sold in the yellow buckets by Defendants did not meet all current specifications (and failed to meet certain obsolete specifications) for any manufacturers of farm, logging and construction equipment.  Alternatively, Defendants knew, or should have known, they had no basis on which to sell the 303 THF Products as tractor hydraulic fluids that met the specifications of all manufacturers listed on the label.

13

45.     At no point in time, on the label of the 303 THF products or otherwise, did Defendants tell purchasers the truth, including that:

    a.   The "303" designation is obsolete, an essential ingredient in the formula was banned in the 1970s, and there is no known 303 specifications against which to test the fluids offered for sale;

    b.   Defendants used lower-quality base oil and other ingredients in the 303 THF Products that are not suitable for use in a tractor hydraulic fluid;

    c.   The 303 THF Products contained a "down-treated" additive package;

    d.   Defendants' test data did not confirm all of the 303 THF Products met all manufacturers' specifications;

    e.   Defendants had no idea whether all of the 303 THF Products it offered for sale met the requirements of, had acceptable anti-wear properties, or was suitable for use in tractors or other equipment; and

    f.   Use of the 303 THF Products would cause damage to purchasers' equipment, such as damage to the spiral gear in the drive, excessive wear, seal leakage, high pump leakage, and damage from deposits, sludging, and thickening.

46.     Instead, the 303 THF Products were deceptively offered for sale as fluids containing quality base oils, sufficient additives, and meeting the obsolete and now unavailable "303" specification.

### The State of Missouri's Testing of 303 THF

47.     Because of the poor, uncertain quality of 303 tractor hydraulic fluids and the deceptive way in which they are manufactured and sold, several private and governmental entities have been concerned about the sale of the fluids, the misleading nature of the labeling, and the

14

damage the fluids can do to tractors and other equipment. The Missouri Department of Agriculture (MDA) is one such entity.

48.     In the summer of 2017, the Missouri Department of Agriculture sampled fourteen (14) different 303 THF products, many of which claimed to work in almost every tractor. Defendants' 303 THF Products were purchased in Missouri by the MDA in 2017 and were some of the products tested.

49.     The MDA tested the fluids' viscosity pour point, and additive and detergent levels to determine whether those levels met any current industry tractor hydraulic fluid specifications, namely, John Deere's J20C specifications.

50.     As a result of the testing, the MDA concluded that all fourteen (14) of the tested 303 THF products failed to meet any current specifications and were found to be underperforming to the point that damage was likely to result from use.

51.     Defendants' Premium 303 Tractor Hydraulic & Transmission Fluid and Mile Master 303 Tractor Hydraulic Fluid were two of the fluids that failed to meet current specifications.

52.     Defendants' THF Products were also found to have additive levels of calcium, phosphorous and zinc that were well below the additive levels found in fluids meeting the J20C specification.

53.     After its testing and research of the tractor hydraulic fluids, the MDA notified Defendants that the products were misbranded and violated Missouri's law prohibiting deceptive business practices (§ 413.115, RSMo.) because they failed to meet current tractor manufacturer's specifications. The MDA's October 5, 2017 letter to Citgo with regard to the Mile Master 303 Tractor Hydraulic Fluid stated:

> The Missouri Department of Agriculture is responsible for insuring that all
> consumer commodities including motor oil, antifreeze, automatic transmission

fluid, or other automotive products sold or offered for sale in the state of Missouri meet the requirements of Missouri Revised Statute, Chapter 413 Weights and Measures and/or Missouri Code of State Regulation 2 CSR 90-22.140, Packaging and Labeling Requirements.

On April 21, 2017, the Division of Weights, Measures and Consumer Protection purchased and tested a sample of Mile Master 303 Tractor Hydraulic Fluid. This product claims to meet John Deer 303 specifications. John Deere 303 was discontinued and was subsequently replaced with the current JDM-J20C or D. Testing indicates your product does not meet Brookfield viscosity at -20C and -35C for John Deere J20C or pour point for J20D. This product is misbranded because the product did not meet the specification limits. Additionally, the reported performance additive content is lower than a typical J20C.

54.     The MDA's letter then referenced Missouri Revised Statue 413.115 and noted the sale of misbranded commodities constituted a crime of deceptive business practice. The MDA letter to Citgo then noted: **"You are hereby ordered to remove this product from sale until changes are made to correct the labeling or the product."**

55.     In an October 12, 2017 letter to Orscheln with regard to Mile Master 303 Tractor Hydraulic Fluid, the MDA noted that "[t]ests indicate this is a misbranded product and does not comply with Missouri law RSMO Chapter 413." The MDA further wrote that Defendant Orscheln was "hereby ordered to remove this product from sale until changes are made to correct the labeling or the product itself."

56.     On November 21, 2017, a notice letter was sent by the MDA to Family Center regarding its sale of Mile Master 303 Tractor Hydraulic Fluid product in Missouri. The letter noted as follows:

On November 20, 2017 an inspector with the Division of Weights, Measures and Consumer Protection identified containers of Mile Master 303 Tractor Hydraulic Fluid offered for sale.

Tests indicate this is a misbranded product and does not comply with Missouri law RSMo Chapter 413.

16

You are hereby ordered to remove this product from sale until changes are made to correct the labeling or the product itself.

57. In an October 12, 2017 letter to Orscheln with regard to Premium 303 Tractor Hydraulic & Transmission Fluid, the MDA noted as follows:

The Missouri Department of Agriculture is responsible for insuring that all consumer commodities including motor oil, antifreeze, automatic transmission fluid, or other automotive products sold or offered for sale in the state of Missouri meet the requirements of Missouri Revised Statute, Chapter 413 Weights and Measures and/or Missouri Code of State Regulation 2 CSR 90-22.140, Packaging and Labeling Requirements.

On April 21, 2017, the Division of Weights, Measures and Consumer Protection purchased and tested a sample of Orschlen Premium 303 Tractor Hydraulic Fluid. This product claims to meet John Deer 303 specifications. John Deere 303 was discontinued and was subsequently replaced with the current JDM-J20C or D. Testing indicates your product does not meet Brookfield viscosity at -20C and -35C for John Deere J20C or pour point for J20D. This product is misbranded because the product did not meet the specification limits. Additionally, the reported performance additive content is lower than a typical J20C.

58. Thus, Premium 303 Tractor Hydraulic & Transmission Fluid and Mile Master 303 Tractor Hydraulic Fluid were among the 303 THF products the Missouri Department of Agriculture tested and that failed to meet any current specifications and were likely to cause damage to equipment.

59. In November and December of 2017, Orscheln provided the following "Advertising Correction Notice:"

Unfortunately we have just been informed by the Department of Agriculture State of Missouri that any 303 Tractor Hydraulic & Transmission Fluid must be pulled from our inventory and cannot be sold. Please accept our apologies for any inconvenience.

Due to this action by the Department of Agriculture State of Missouri, Orscheln Farm & Home is issuing an advertisement correction notice for the flyers listed below featuring a 303 Tractor Hydraulic & Transmission Fluid. All 303 Tractor Hydraulic & Transmission Fluid is no longer in stock in Missouri.

17

### Plaintiffs' Experience with Defendants' Labeling, Advertising and Products

60. In the five-year period prior to the original filing of this Class Action, Plaintiffs purchased Defendants' 303 THF Products on numerous occasions, primarily for personal, family, or household purposes.

61. As with all Members of the Class, in the five-year period prior to the original filing of this Class Action, Plaintiffs purchased Defendants' 303 THF Products containing the label representations set forth above.

62. Plaintiff Shawn Hornbeck purchased and used Orscheln Premium 303. In the fall of 2015, Shawn purchased three 5-gallon buckets of Orscheln Premium 303 Tractor Hydraulic & Transmission Oil at Orscheln's located in Raymore, Missouri. The cost was $23.00 each (approximately $70 with tax). In the spring of 2016, Shawn purchased one more 5-gallon bucket of Orscheln Premium 303 at the same Orscheln's store located in Raymore, Missouri. The cost was $23 plus tax.

63. These 303 THF Products were used by Plaintiff Hornbeck for personal use on the following equipment: John Deere Skid Steer Loader Hydraulic System, John Deere B Tractor, JD 50 Tractor Hydraulic Lift, Hay Wagon Lift Cylinder, Log Splitter Hydraulic Tank, 1952 Chevy Grain Truck Lift Cylinder, and 1958 International Dump Lift System.

64. Plaintiff Monte Burgess purchased and used Mile Master 303 Tractor Hydraulic Fluid. Between Summer of 2013 and the end of 2017, Monte purchased 5-gallon buckets of Mile Master 303 at Orscheln's store located in Raymore, Missouri and also at Family Center's store in Harrisonville, Missouri. Plaintiff paid approximately $25 for each bucket.

18

65. These 303 THF Products were used by Plaintiff Burgess for personal use on the following equipment: tractors (including, without limitation, a 9000 Ford tractor and a 1070 Case tractor), mowers, dump trucks, brush hogs, farm implements, skidders and log splitters.

66. Plaintiff Raymond Bieri purchased and used Premium 303 Tractor Hydraulic & Transmission Fluid. Between the Summer of 2013 and the end of 2017, Plaintiff Bieri purchased 5-gallon buckets of Premium 303 at the Orscheln store located in California, Missouri. Plaintiff paid approximately $25 for each bucket.

67. The Premium 303 THF Product was used by Plaintiff Bieri for personal use in a 1970s Massey Ferguson tractor and other equipment.

68. Plaintiff Dan Chevalier purchased and used Mile Master 303 Tractor Hydraulic Fluid. Between Summer of 2013 and the end of 2017, Plaintiff Chevalier purchased 5-gallon buckets of Mile Master 303 at Orscheln's store located in Raymore, Missouri and from the Family Center store located in Harrisonville, Missouri. Plaintiff paid approximately $25 for each bucket.

69. These 303 THF Products were used by Plaintiff Chevalier for personal use in a 1970 John Deer 3020 tractor and other equipment.

70. Plaintiff Jim Kircher purchased and used Premium 303 Tractor Hydraulic & Transmission Fluid. Between the Summer of 2012 and the end of 2016, Plaintiff Kircher purchased 5-gallon buckets of Premium 303 at the Orscheln store located in Booneville, Missouri. Plaintiff paid approximately $25 for each bucket.

71. These 303 THF Products were used by Plaintiff Kircher in Case IH tractors, IH tractors and combine, Deutz Allis tractor, and other equipment.

72. Plaintiff Robert Caviness purchased and used Premium 303 Tractor Hydraulic &

19

Transmission Fluid. Between the Summer of 2013 and the end of 2017. Plaintiff Caviness purchased 5-gallon buckets of Premium 303 at the Orscheln store located in Nevada, Missouri. Plaintiff paid approximately $25 for each bucket.

73.     These 303 THF Products were used by Plaintiff Caviness in Case IH tractors and other equipment.

74.     As a result of Defendants' manufacturing and offering the 303 THF Products for sale in Missouri, Plaintiffs purchased a tractor hydraulic fluid that was (falsely and deceptively) offered for sale as a "303" fluid that contained quality base oils and additives, met required specifications and was safe for use in equipment when, in reality, the fluid offered was of uncertain quality, lacked adequate viscosity and additives, had a value much less than the price offered for sale, and exposed equipment to increased wear and damage.

75.     Plaintiffs reasonably relied on Defendants' representation that each fluid was a "303" fluid and on Defendants' own labeling, statements and advertisements concerning the particular qualities and benefits of the 303 THF Products.

76.     All reasonable consumers would consider Defendants' 303 THF Products to be suitable for use in tractors and other equipment and would not have any understanding or way to know that Defendants' 303 THF Products were of uncertain quality, lacked adequate viscosity and additives, had a value much less than the price offered for sale, and/or that use of Defendants' 303 THF Products would cause all equipment to suffer increased wear and damage.

77.     A reasonable consumer would consider Defendants' labeling, statements and advertisements when looking to purchase a tractor hydraulic fluid. As a result of using Defendants' 303 THF Products, Plaintiffs and Class Members: (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were

deprived of the benefit of the bargain because the 303 THF Product was different than what Defendants represented; (d) were deprived of the benefit of the bargain because the 303 THF Product had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; and (f) suffered damage to their equipment, including but not limited to excessive wear, leakage in the seals, exposure to spiral gear damage, improper and poor shifting, wear and damage to wet brakes, high pump leakage, and damage from deposits, sludging and thickening.

78.     When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiffs and Class Members their 303 THF Products, Defendants knew or should have known that product (1) did not meet manufacturer specifications and was not acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors, newer tractors, and other equipment; (2) was not an adequate substitute for and did not satisfy John Deere's JD-303 specifications and/or designation; (3) was not adequate to provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) was not adequate to protect against rust and corrosion; (5) contained ingredients not suitable for use in tractor hydraulic fluid; and (6) was not appropriate for uses set forth on the label and/or in equipment of manufacturers whose specifications were claimed to have been met and/or where a product of its quality is recommended, including Allis-Chalmers, Massey, Ferguson, White, Allison, Case, International Harvester, Kubota, John Deere, New Holland, Ford and Caterpillar.

79.     Plaintiffs used the 303 THF Products in the manner in which Defendants advised the 303 THF Products could and should be used.

80.     As a result of Defendants' 303 THF Products not meeting specifications as labeled, advertised, marketed, warranted, and promised, Defendants violated the Missouri Merchandising

Practices Act, breached express and implied warranties, fraudulently or negligently induced Plaintiffs and Class Members to purchase their products through material misrepresentations, acted in a negligent manner, and were unjustly enriched.

81.     Defendants' manufacture, labeling, and sale of their 303 THF Products was deceptive and misleading in at least the following respects:

a.  Defendants' use of John Deere's "303" designation in the name of the product is deceptive and misleading. The 303 THF Products are not John Deere products, do not use John Deere 303's formula and cannot meet the specifications for John Deere 303. Defendants packaged their 303 THF Products in the yellow bucket, and used and traded on the John Deere name, so as to further deceive and mislead and create impression that the 303 THF Product was a legitimate tractor hydraulic fluid that met the specifications for John Deere 303 and other John Deere equipment.

b.  Defendants placed a deceptive and misleading statement on the product label by claiming that John Deere 303 is one of the specifications which the 303 THF Products meet.

c.  Defendants placed a deceptive and misleading statement on the Mile Master 303 Tractor Hydraulic Fluid product label by listing other manufacturers as those for which that product meets specifications, when such specifications were not actually met, and also in listing manufacturers without specifying the equipment/specifications purportedly met for each of those manufacturers or exactly where the product is "recommended."

22

d. Defendants engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the labels of the 303 THF Products.

e. Defendants placed a deceptive and misleading statement on the product labels by listing manufacturers of equipment in which the 303 THF Products purportedly may be used, when in reality the product does not meet many of the specifications for the listed manufacturers' modern or older model equipment.

f. Defendants made a deceptive and misleading statement on the product label when claiming that the Premium 303 THF product is "designed to be a universal lubricant for farm, logging and construction equipment."

g. Defendants made a deceptive and misleading statement on the product label when claiming that the Premium 303 THF product is "manufactured from base oils selected for their purity and thermal stability."

h. Defendants made a deceptive and misleading statement on the product label when claiming that the Premium 303 THF product "contains a premium additive package to provide wear protection and anti-oxidant properties. . . ."

i. Defendants made a deceptive and misleading statement on the product label when claiming that the Premium 303 THF product "contains extreme pressure additives to protect gears and working parts of pumps and hydraulic equipment."

j. Defendants made a deceptive and misleading statement on the product label when claiming that the Premium 303 THF product provide "excellent water separation and anti-foaming characteristics."

k. Defendants made a deceptive and misleading statement on the product label in their representation that the Mile Master 303 THF product is "a general purpose, multi-grade lubricant for farm, construction and logging equipment."

l. Defendants made a deceptive and misleading statement on the product label when claiming that the Mile Master 303 THF product is "specifically formulated with base oils and additives designed to help protect against wear, rust, corrosion, and foaming."

82.     The conduct listed in paragraph 81(a)-(l) constitutes deceptive business practices in violation of Missouri Revised Statute 413.115: "**Deceptive business practices, prohibited**- A person commits the crime of deceptive business practice if in the course of engaging in a business, occupation or profession, he or she reckless: (4) Sells, offers or exposes for sale misbranded commodities."

83.     This action is brought by Plaintiffs against Defendants to recover all money paid by Plaintiffs and Class Members to Defendants for purchase of their 303 THF Products which were labeled, marketed, advertised, and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage caused to equipment owned by Plaintiffs and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendants' conduct.

## CLASS ACTION ALLEGATIONS

84.    Plaintiffs bring this Class Action pursuant to Rule 23 of the Federal Rules of Civil

Procedure, on behalf of themselves and the following Classes of similarly situated persons:

> All persons and other entities who purchased Orscheln Premium 303 Tractor Hydraulic & Transmission Fluid in Missouri at any point in time from May 25, 2013 to present, excluding those who purchased for resale.

> -and-

> All persons and other entities who purchased Mile Master 303 Tractor Hydraulic Fluid in Missouri at any point in time from May 25, 2013 to present, excluding those who purchased for resale.

85.    Also excluded from the Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

86.    The 303 THF Products at issue were sold across Missouri through retailers. The Class Members may be identified through use of sales receipts, affidavits, or through sales records.

87.    The proposed Class is so numerous that joinder of all Class Members is impracticable. Although the exact number and identity of each Class Member is not known at this time, there are thousands of Members of the Class.

88.    There are questions of fact and law common to the Class which predominate over questions affecting only individual Class Members. The questions of law and fact common to each Class arising from Defendants' actions include, without limitation, the following:

> a.    Whether Defendants' 303 THF Products were being labeled, advertised and marketed as alleged in paragraphs 7-9, 11, 33-46, 74-78, and 81-82, above;

> b.    Whether Defendants studied or tested their labeling and the effect of the labeling on consumers' perceptions, and whether Defendants studied

25

the susceptibility of consumers who might purchase tractor hydraulic fluid;

c. Whether Defendants' 303 THF Products in actuality were as alleged in paragraphs 12, 41-58, 74-78, and 81-82, above;

d. The components and qualities of Defendants' 303 THF Products, and the cost to Defendants to manufacture, distribute, market and sell their THF Products;

e. Whether Defendants' manufacturing, labeling, advertising, marketing, and/or sale of their 303 THF Products was deceptive, unfair, and/or dishonest as alleged in paragraphs 7-9, 11, 33-46, 74-78, and 81-82;

f. Whether Defendants breached the express warranties provided with regard to the 303 THF Products;

g. Whether Defendants breached the implied warranty of merchantability with regard to the 303 THF Products;

h. Whether Defendants breached the implied warranty of fitness for particular purpose with regard to the 303 THF Products;

i. Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the 303 THF Products and the obsolete nature of the product and the specifications the product claimed to meet;

j. Whether Defendants' representations regarding their 303 THF Products were false and made knowingly by Defendants, and were therefore deceptions, frauds, false pretenses, false promises, and/or misrepresentations as described in 407.020 RSMo and a violation thereof;

k. Whether Defendants' representations were false and made negligently by Defendants, and were therefore deceptions, frauds, false pretenses, false promises, and/or misrepresentations as described in 407.020 RSMo and a violation thereof;

l. Whether use of the 303 THF Products caused and/or exposed equipment to damage;

m. Whether Defendants were unjustly enriched; and,

n. Whether Defendants were negligent.

26

89.     Each representative Plaintiff's claims are typical of those in the putative Class because each purchased Defendants' 303 THF Products and was similarly treated.

90.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of other Members of the Class.  The interests of the other Class Members will be fairly and adequately protected by Plaintiffs and counsel, who have extensive experience prosecuting complex litigation and class actions.

91.     A Class Action is the appropriate method for the fair and efficient adjudication of this controversy.  It would be impracticable, cost prohibitive, and undesirable for each Member of the Class to bring a separate action.  In addition, the presentation of separate actions by individual Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendants, and/or substantially impairs or impedes the ability of Class Members to protect their interests.  A single Class Action can determine, with judicial economy, the rights of the Members of the Class.

92.     A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

93.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class. The Class Action is based on Defendants' acts and omissions with respect to the Class as a whole, not on facts or law applicable only to the representative Plaintiffs.  All Class Members who purchased Defendants' products were treated similarly.  Thus, all Class Members have the same legal right to an interest in relief for damages associated with the violations enumerated herein.

94.     Plaintiffs assert in Counts I through VIII, below, the following claims on behalf of themselves and the Class:

- Count I – Missouri Merchandising Practices Act Violations

- Count II – Breach of Express Warranty

- Count III – Breach of Implied Warranty of Merchantability

- Count IV – Fraud/Misrepresentation

- Count V – Negligent Misrepresentation

- Count VI – Unjust Enrichment

- Count VII – Negligence

- Count VIII – Breach of Implied Warranty of Fitness for Particular Purpose

## COUNT I
**(Violations of Missouri's Merchandising Practices Act)**
**(Plaintiffs and All Class Members Who Purchased For Personal, Family, Household Use)**

95.     Plaintiffs incorporate by reference all preceding paragraphs of this Second Amended Class Action Complaint as if fully set forth herein.

96.     Plaintiffs and many Class Members purchased Defendants' 303 THF Products for personal, family, or household purposes.

97.     Plaintiffs are all "person[s]" for purposes of the Missouri Merchandising Practices Act ("MMPA"). Mo. Rev. Stat. § 407.010.

98.     Defendants' 303 THF Products meets the definition of "merchandise" for purposes of the MMPA. Mo. Rev. Stat. § 407.010.

99.     Defendants' sale of their 303 THF Products is a "sale" within the meaning of the MMPA. Mo. Rev. Stat. § 407.010.

28

100. Defendants engaged in "trade" or "commerce" within the meaning of the MMPA. Mo. Rev. Stat. § 407.010.

101. Under the MMPA, Defendants have a statutory duty to refrain from deceptive acts and practices.

102. Pursuant to the MMPA, an unlawful practice is the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri." Mo. Rev. Stat. § 407.020.

103. Defendants used and employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Products in trade or commerce in the state of Missouri, in violation of the MMPA.

104. Defendants' conduct set forth in paragraphs 7-9, 11, 33-46, 74-78, 81-82 and elsewhere above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, were unfair, deceptive, false and misleading and made knowingly by Defendants or without knowledge as to their truth or falsity and were therefore deceptions, frauds, false pretenses, false promises, and misrepresentations as described at § 407.020 RSMo, and therefore a violation of the MMPA.

105. Defendants' conduct set forth in paragraphs 7-9, 11, 33-46, 74-78, 81-82, and elsewhere above, including without limitation the label representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and Defendants' failure to inform consumers of the true nature of the product and

the obsolete specifications, also constituted the omission or suppression of a material fact in violation of § 407.020 RSMo in that Defendants' 303 THF Products were not appropriate for use and did not meet specifications as labeled, advertised, marketed, and sold.

106. Defendants' conduct as set forth herein with regard to the marketing and sale of the 303 THF Products constitutes unlawful, unfair and/or fraudulent business practices in violation of the MMPA.

107. Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression or omission of material facts in connection with the marketing and sale of the 303 THF Products, all in violation of §407.020 RSMo.

108. Defendants' conduct with regard to their 303 THF Products was materially misleading and deceptive, and was a proximate cause of economic damage to purchasers.

109. Plaintiffs and Class Members have suffered economic and other damages as a result of Defendants' conduct with regard to the marketing and sale of the 303 THF Products.

110. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and Class Members have suffered ascertainable losses of money.

111. Defendants' conduct as described herein was intentional, done knowingly, in conscious disregard of the rights of Plaintiffs and other Class Members, and in violation of § 407.020 RSMo, and the regulations of the Attorney General of Missouri promulgated thereunder.

112. Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT II
### (Breach of Express Warranty – Plaintiffs and All Class Members)

113. Plaintiffs incorporate by reference all preceding paragraphs of this Second Amended Class Action Complaint as if fully set forth herein.

30

114. Plaintiffs and Class Members purchased Defendants' 303 THF Products.

115. As set forth above, Defendants made common statements of facts regarding the quality and use in the name and on the label of the THF 303 Products.

116. The common statements Defendants made in the name and on the label of the 303 THF Products were made to induce Plaintiffs and Class Members to purchase the 303 THF Products and/or were a material factor in inducing Plaintiffs and Class Members to purchase the 303 THF Products, and therefore became part of the basis of the benefit of the bargain and an express warranty.

117. As set forth above, the THF 303 Products did not conform to the statements of Defendants. As a result, Plaintiffs and the Class Members did not receive goods as warranted by Defendants.

118. Defendants have received timely notifications of the defects in their THF 303 Products.

119. The failure of the THF 303 Products to conform to the statements of Defendants has caused injury and damage to Plaintiffs and Class Members.

## COUNT III
**(Breach of Implied Warranty of Merchantability – Plaintiffs and All Class Members)**

120. Plaintiffs incorporate by reference all preceding paragraphs of this Second Amended Class Action Complaint as if fully set forth herein.

121. Defendants directly or indirectly sold the 303 THF Products to Plaintiffs and Class Members for use as described above.

122. As set forth above, at the time Defendants sold the 303 THF Products, those products were not fit for their ordinary use and the use described by Defendants.

31

123. Plaintiffs and Class Members used the 303 THF Products for their ordinary purpose and the use described by Defendants.

124. Defendants have received timely notification of the defects in their 303 THF Products.

125. The failure of the 303 THF Products to be fit for their ordinary purpose has caused injury and damage to Plaintiffs and Class Members.

**COUNT IV**
**(Fraudulent Misrepresentation – Plaintiffs and All Class Members)**

126. Plaintiffs incorporate by reference all preceding paragraphs of this Second Amended Class Action Complaint as if fully set forth herein.

127. Defendants made representations regarding their 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits.

128. Defendants' representations set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits, were false and made knowingly by Defendants, and were therefore fraudulent.

129. Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, and that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits, were made by each Defendant with the intent that Plaintiffs and other Class Members rely on such representations.

130. Defendants' representations as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant despite knowing the representations were false at the time the representations were made, and/or without knowledge of the truth or falsity of the representations.

131. Defendants' representations were material to the purchase of 303 THF Products.

132. Plaintiffs and Class Members relied on Defendants' representations, and such reliance was reasonable under the circumstances.

133. Defendants' conduct as set forth herein with regard to the name, labeling, marketing and sale of 303 THF Products constitutes fraud on Plaintiffs and all Class Members.

134. Plaintiffs and Class Members have been economically damaged by Defendants' fraudulent conduct with regard to the marketing and sale of 303 THF Products.

135. As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and Class Members have suffered ascertainable losses of money and other damages.

136. Defendants' conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiffs and other Class Members.

137. Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

## COUNT V
### (Negligent Misrepresentation – Plaintiffs and All Class Members)

138. Plaintiffs incorporate by reference all preceding paragraphs of this Second Amended Class Action Complaint as if fully set forth herein.

33

139.    Defendants made representations regarding their 303 THF Products, as set forth above, including without limitation the representations that the 303 THF Products were fit to be used in older tractors and other equipment, that the 303 THF Products met specifications, and that the 303 THF Products provided certain qualities, results and benefits.

140.    Such representations were made by Defendants with the intent that Plaintiffs and the Class Members rely on such representations in purchasing Defendants' 303 THF Products.

141.    Such representations were material to Plaintiffs' and the Class Members' purchase of Defendants' 303 THF Products.

142.    Such representations were false.

143.    Defendants failed to use ordinary care and were negligent in making and/or allowing to be made the representations set forth above.

144.    Plaintiffs and the Class Members relied on such representations and such reliance was reasonable under the circumstances.

145.    Plaintiffs and Class Members have been economically damaged by Defendants' negligent conduct with regard to the marketing and sale of 303 THF Products.

146.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered ascertainable losses of money.

### COUNT VI
**(Unjust Enrichment – Plaintiffs and All Class Members)**

147.    Plaintiffs incorporate by reference all preceding paragraphs of this Second Amended Class Action Complaint as if fully set forth herein.

148.    As a result of Defendants' deceptive, fraudulent, and misleading advertising, marketing, and sales of 303 THF Products, Plaintiffs and the Class Members purchased

34

Defendants' 303 THF Products and conferred a benefit upon Defendants, which Defendants appreciated and accepted.

149.    Those benefits were obtained by Defendants under false pretenses because of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the 303 THF Products.

150.    Defendants were enriched at the expense of Plaintiffs and other Class Members through the payment of the purchase price for Defendants' 303 THF Products.

151.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

152.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the other Class Members, in light of the fact that the 303 THF Products purchased by Plaintiffs and the other Members of the Class were not what Defendants represented them to be.  Thus, it would be inequitable or unjust for Defendants to retain the benefit without restitution to Plaintiffs and the other Members of the Class for the monies paid to Defendants for the 303 THF Products.

153.    By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and gains which they have obtained at the expense of Plaintiffs and Class Members.

## COUNT VII
### (Negligence – Plaintiffs and All Class Members)

154.    Plaintiffs incorporate by reference all preceding paragraphs of this Second Amended Class Action Complaint as if fully set forth herein.

155.    Defendants owed a duty of at least reasonable care to the purchasers of their 303 THF Products, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished THF Products.

156.    Defendants breached this duty by the acts and omissions alleged herein, including but not limited to:

    a.   Distribution and use of misleading labeling information regarding the 303 THF Product qualities and OEM specifications met by product;

    b.   Failing to adequately warn and instruct purchasers about the true nature of the 303 THF Product and potential harm to equipment caused by use of the 303 THF Product in equipment for which it does not meet specifications;

    c.   Failing to adequately ensure the 303 THF Product manufactured and sold met the advertised specifications;

    d.   Failing to adequately ensure the ingredients used are suitable for use in tractor hydraulic fluid;

    e.   Failure to utilize adequate testing and other controls to ensure the 303 THF Product met the advertised specifications; and,

    f.   Instituting and/or allowing careless and ineffective product manufacturing protocols.

157.    As a result of Defendants' negligence, Defendants' 303 THF Products had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications.

152.    Defendants' negligence caused or contributed to cause injuries and damages to Plaintiffs and the Class Members, caused Plaintiffs' and the Class Members' equipment to suffer

harm and damage, including wear, damage and leakage in the seals, and exposure to damage in the spiral gear in the drive, improper and poor shifting, wear and damage to wet brakes, high pump leakage, and damage from deposits, sludging and thickening. Defendants' negligence also caused Plaintiffs and the Class Members to overpay for a product that was worthless and/or worth much less than the sale price.

153. Plaintiffs and Class Members are thus entitled to an award of compensatory damages, prejudgment interest and post-judgment interest.

154. Defendants' conduct was grossly negligent and showed a complete indifference to or conscious disregard of the rights of others, including Plaintiffs and Class Members, such that punitive damages are thus warranted.

## COUNT VIII
### (Breach of Implied Warranty of Fitness for Particular Purpose)
### (Plaintiffs and All Class Members)

155. Plaintiffs incorporate by reference all preceding paragraphs of this Second Amended Class Action Complaint as if fully set forth herein.

156. Defendants directly or indirectly sold the 303 THF Products to Plaintiffs and Class Members for use as described above.

157. As set forth above, at the time Defendants sold the 303 THF Products, the products were not fit for its particular purpose of use as universal hydraulic fluid for tractors and/or other equipment.

158. Defendants knew or should have known of the use for which the 303 THF Products were purchased.

159. Plaintiffs and Class Members reasonably relied upon Defendants' judgment that the 303 THF Products were fit for use as universal hydraulic fluid for tractors and/or other equipment.

160. Defendants have received from Plaintiffs timely notification of the defect in their 303 THF Products.

161. The failure of the 303 THF Products to be fit for its particular purpose has caused injury and damage to Plaintiffs and Class Members.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described in this Second Amended Class Action Complaint, respectfully request that:

A. The Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adjudge Plaintiffs and counsel to be adequate representative thereof;

B. The Court enter an Order requiring each Defendant to pay actual and punitive damages to Plaintiffs and the other Members of the Class;

C. The Court enter an Order awarding Plaintiffs, individually and on behalf of the other Members of the Class, their expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

D. The Court enter an Order awarding to Plaintiffs, individually and on behalf of other Members of the Class, pre-and post-judgment interest, to the extent allowable; and,

E. For such other and further relief as may be just and proper.

F.

## DEMAND FOR JURY TRIAL

Plaintiffs and Class Members hereby demand a jury trial on all issues of fact and damages

in this action.##

Date: June 12, 2019                    Respectfully submitted,

WHITE, GRAHAM, BUCKLEY,
& CARR, L.L.C

BY:___*/s/ Gene P. Graham, Jr.*___
    Gene P. Graham, Jr.   MO 34950
    William Carr          MO 40091
    Bryan T. White        MO 58805
    19049 East Valley View Parkway
    Independence, Missouri 64055
    (816) 373-9080 Fax: (816) 373-9319
    ggraham@wagblaw.com
    bwhite@wagblaw.com

HORN AYLWARD & BANDY, LLC

BY:___*/s/ Thomas V. Bender*___
    Thomas V. Bender, MO Bar #28099
    Dirk Hubbard, MO Bar #37936
    2600 Grand, Ste. 1100
    Kansas City, MO 64108
    (816) 421-0700
    (816) 421-0899 (Fax)
    dhubbard@hab-law.com

CLAYTON JONES, ATTORNEY AT LAW

BY:___*/s/ Clayton A. Jones*___
    Clayton Jones       MO51802
    P.O. Box 257
    405 W. 58 Hwy.
    Raymore, MO 64083
    Office: (816) 318-4266
    Fax: (816) 318-4267
    claytonjoneslaw.com

**ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS**

39